
~~SECRET~~

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED SULAYMON BARRE (ISN 567) ) ) ) Petitioner ) ) v. ) ) BARACK OBAMA, *et al.*, ) ) Respondents. ) | Filed with Classified Information Security Officer<br>CISO _____<br>Date ___3/8/13___<br><br>Civ. No. 08-1153 (RCL) |

### MEMORANDUM & ORDER

Now before the Court is respondents' Motion [186] to Deem Protected Information Highlighted in the government's proposed public factual return for ISN 567 and petitioner's Cross-Motion [188] to Compel. Upon consideration of the respondents' Motion [186], the petitioner's Opposition and Cross-Motion [188], the respondents' Reply [194] in support of their Motion to Deem Protected Information Highlighted and Opposition to the petitioner's Cross-Motion, and petitioners' Reply [194] in support of their Cross-Motion, the Court will grant in part and deny in part respondents' Motion [186], and will grant in part and deny in part petitioner's Cross-Motion [188].

I. BACKGROUND

Respondents submitted a Motion to Deem Protected Information Highlighted in the government's proposed public factual return for ISN 567 pursuant to paragraph 34 of the Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba (Sept. 11, 2008) (08-mc-332, ECF. No 409) ("Protective Order"), and Judge Hogan's June 1, 2009, January 14, 2010, and May 12, 2011, Orders in *In re*





*Guantanamo Bay Detainee Litig.* (08-mc-442, ECF. Nos. 1781, 1896, 1980). *See* ECF No. 186. Petitioner, whose case was dismissed in 2010 and who has been released from detention, opposes the motion and has moved to compel compliance with the Protective Order regarding three of his filings. *See* Pet'r's Notice of Filing of Opp'n and Cross-Motion, ECF No. 188.

Specifically, petitioner objects to deeming protected any language that was not redacted in the public factual return filed with the Court on July 29, 2009, as that factual return remains publically available. Petitioner also objects to redactions of certain documents in the proposed public factual return that exceed the redactions contained in the same documents that were reviewed by the petitioner in preparation for litigation. Petitioner also cross-moves for an order requiring the government to "comply" with the Protective Order by publicly disclosing, within thirty days, or alternatively, with the public filing of the reprocessed factual return, public versions of three of his classified filings, namely, his Traverse, Motion to Admit Hearsay Evidence, and Response to the Government's Motion to Admit Hearsay Evidence, which total nearly 500 pages. Petitioner believes that it "would be highly misleading for the public to have available to it only the government's selective version" of the facts surrounding petitioner's capture and detention at Guantanamo.

## II. DISCUSSION

### A. The Government's Motion to Deem Protected Information Highlighted in the Proposed Factual Return for ISN 567 is granted in part and denied in part.

With regard to the government's Motion to Deem Protected Information Highlighted in the proposed public factual return for ISN 567, the Court is satisfied that the only remaining issues to be resolved are whether the specific geographic coordinates of an al-Qaeda training facility revealed in document IIR 227 0131 03 and a word that appeared in a March 1, 2002, "Handnote" (both of which were unprotected in the publicly filed 2009 factual return and remain

2



SECRET

publicly available today) should be deemed protected, and whether information made available to the petitioner and his counsel, but not to the public, must now be released.[1]

### 1. Neither the geo-coordinates nor the single word appearing in the March 2002 Handnote will be deemed protected.

As an initial matter, litigants seeking to compel the disclosure of national security information on the ground that it already lies in the public domain must show that the information has been "officially acknowledged." *Cf. Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).[2] In the Freedom of Information Act (FOIA) context, information is deemed officially acknowledged when (1) the information requested is as specific as the information previously released; (2) the information requested matches the information disclosed; and (3) the information requested has already been made public through an official and documented disclosure. *Id.* The information cannot merely be overlapping; it must be identical. *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citations omitted). Importantly, an "official disclosure" can only be made by the agency from which the information is being sought; information released by Congress, other executive agencies, or former employees does not qualify. *Frugone v. CIA*, 169 F.3d 772, 774–75 (D.C. Cir. 1999) (citations omitted); *see also Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981) (CIA could invoke privilege against disclosure even after the National Science Foundation had disclosed the existence and content of classified information).

The information at issue here—six geo-coordinates and a single word in the March 2002 Handnote, which the government claims is classified—was made public in the 2009 Factual Return, which is still publically accessible via the Court's ECF/PACER system. *See* Public Factual Return Exhibit 4 at 35, ECF No. 142-5, July 29, 2009 (geo-coordinates), and Exhibit 4 at

---

[1] Petitioner provided no briefing to support his arguments that the Protective Order is either unconstitutional or that it violates the D.C. Circuit's decisions in *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008) and *Ameziane v. Obama*, 620 F.3d 1 (D.C. Cir. 2010). Therefore, the Court need not decide these issues.
[2] The most analogous law on disclosure has been developed in the Freedom of Information Act (FOIA) context.

3



48 (Handnote). Although an "official disclosure" can only be made by the agency from which the information is sought, *see Frugone*, 169 F.3d at 774–75, the Court is satisfied that the specific disclosures in the 2009 public factual return meet this test. The creation of a public factual return is a process involving agency-owners of confidential and classified information. As detailed at length in the government's submission and supporting exhibits, the process for identifying, redacting, or marking as protected sensitive and classified information in the public factual return is complex and thorough, providing multiple layers of overlapping agency review by each stakeholder in the process. Therefore, any disclosures of such information in a public factual return can rightfully be attributed to the individual agencies that participated in the process. Thus, the Court is satisfied that the information in question here has been "officially acknowledged" by the government. *Cf. Fitzgibbon*, 911 F.2d at 765.

However, the government argues that its disclosure was inadvertent and, therefore, that it may still protect the information regardless whether it was previously disclosed. To support its "inadvertent disclosure is not disclosure" argument, the government cites *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1202 (9th Cir. 2007). However, the facts of *Al-Haramain* are inapposite. In *Al-Haramain*, the government inadvertently disclosed a sealed document classified TOP SECRET to counsel for Al-Haramain, a Muslim charity involved in a Treasury Department proceeding related to Al-Haramain's possible ties to al-Qaeda. *Id.* at 1194. Eight months later, after realizing that the document had inadvertently been disclosed, the FBI retrieved copies of the document provided to Al-Haramain's counsel. *Id.* at 1194–95. After *The New York Times* reported on the government's Terrorist Surveillance Program ("TSP," popularly known as the NSA's warrantless wiretapping program), Al-Haramain surmised, based partly on the inadvertently disclosed classified document, that they were a target of the TSP and



UNCLASSIFIED//FOR PUBLIC RELEASE



filed suit claiming that the Government had violated the organization's constitutional rights. *Id.* at 1195. The government invoked the state secrets doctrine as to both the existence of the TSP and the inadvertently released classified document, and moved to dismiss the lawsuit. *Id.* The Ninth Circuit determined that the government could not deny the existence of the TSP because senior executive officials, including the President, had publicly acknowledged that the program existed. *See id.* at 1199–1200. However, the Court determined that despite its disclosure, the classified document at issue was covered by the state secrets privilege. *Id.* at 1203.

Here, the government has not invoked the state secrets privilege. The disclosure of both the geo-coordinates and the single word in the March 2002 Handnote were not made under seal to the opposing party but, instead, were publicly released and placed on the Court's docket, where they remain. Unlike in *Al-Haramain*, where the FBI attempted to collect the inadvertently released document, the government has made no attempt to remove and replace the 2009 factual return currently available to the public with a document containing the specific redactions. Indeed, Paragraph 50 of the Protective Order requires the government, upon discovery of the disclosure of classified or protected information on the public record, to notify a Court Security Officer, who will then work with the Clerk of Court to remove the filing from the public docket. *In re Guantanamo Bay Detainee Litig.*, 577 F. Supp. 2d 143, 155 (D.D.C. Sept. 11, 2008). Respondents submitted no evidence indicating that they followed the procedures outlined in Paragraph 50. Such actions on the part of the government would provide strong evidence that the government's disclosure was, indeed, inadvertent, and would support the government's assertion that the public availability of the information, compounded by any other release, has caused or is expected to cause serious damage to national security.

5

UNCLASSIFIED//FOR PUBLIC RELEASE

The government also failed to argue why the instant information falls into one of the six categories of information Judge Hogan designated as protected.[3] The D.C. Circuit has been very clear: the government does not have the unilateral authority to designate information as protected. *Ameziane v. Obama*, 620 F.3d 1, 6 (D.C. Cir. 2010) (discussing *Bismullah v. Gates*, 501 F.3d 178, 188 (D.C. Cir. 2007)). For the Court to deem protected unclassified but sensitive information in public factual returns, the "government must first demonstrate *what kind* of information requires protection and *why*, and then must show exactly *what* information in the case at hand it seeks to protect." *Id.* (citing *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008)). It must provide the Court with a rationale "tailored to the specific information at issue," *Parhat*, 532 F.3d at 853, and a "precise designation of each particular item of information that purportedly 'falls within the categor[y] . . . described,'" *Ameziane*, 620 F.3d at 6 (quoting *Parhat*, 532 F.3d at 853). That is, the government must (1) identify the specific information it

---

[3] Judge Hogan's May 31, 2011, Order allowed the government to designate as protected information falling into six categories:
> 1. Names and/or other information that would tend to identify certain U.S. government employees, FBI Joint Terrorism Task Force members, or contractors—specifically, law enforcement officers, agents, translators, intelligence analysts, or interrogators, all below the Senior Executive Service or General Officer level—of the family members of detainees.
> 2. Information that would reveal the existence, focus, or scope of law enforcement or intelligence operations, including the sources, witnesses, or methods used and the identity of persons of interest.
> 3. Information indicating the names or locations, including geo-coordinates, of locations of interest as they pertain to counter-terrorism intelligence gathering, law enforcement, or military operations, where the Government has not previously acknowledged publically its knowledge of those names or locations.
> 4. Information that would reveal the Government's knowledge of telephone numbers, websites, passwords, passcodes, and e-mail addresses used by known or suspected terrorists, or discussions of the manner in which known or suspected terrorists use these methods for communications with one another.
> 5. Information regarding the use, effectiveness, or details regarding the implementation of certain interrogation approaches and techniques approved by Executive Order 13491 and described in the Army Field Manual No. 2–22.3.
> 6. Certain administrative data, operational 'nicknames,' code words, dates of acquisition, including dates of interrogations, and FB case names and file numbers, contained in the intelligence documents included in the factual returns.

*In re Guantanamo Bay Detainee Litig.*, 787 F. Supp. 2d 5, 8 (D.D.C. 2011).

6

wishes to protect, (2) identify the protected category of information into which that information falls, and (3) convince the Court that the information should be protected. *See id.* at 6–7.

Here, the government in its initial pleading simply stated that that the "six categories that have been approved by Judge Hogan cover all of the information highlighted within the factual return for ISN 567."[4] Neither the government's original motion nor its reply to petitioner's specific objections specified what information fell into which category. Indeed, it appears to the Court that neither the geo-coordinates nor the word in the March 2002 Handnote would fall into any of the categories. Although it might fall into Category 3—which explicitly allows for the protection of geo-coordinates of locations of interest that pertain to counter-terrorism intelligence—information which has been "previously acknowledged publicly" is exempted from protection. *See In re Guantanamo Bay Detainee Litig.*, 787 F. Supp. 2d at 8.

Based on the pleadings here, if the Court granted the government's motion, the Court would be ceding back to the government the unilateral authority to designate information as protected. Because the government has failed to meet its burden as to the geo-coordinates and single word in the March 2002 Handnote, and because those pieces of information have been officially acknowledged and remain publicly available, the government's motion will be denied. All highlighted information in the proposed public factual return will be deemed protected except for these two pieces of information.

### 2. *Documents prepared for petitioner's review but not otherwise released to the public were not "officially acknowledged" by the government and will be deemed protected.*

During petitioner's detention and in preparation for litigation, the government allowed petitioner's counsel to show and discuss a number of documents with petitioner. These same

---

[4] The government also seeks to redact certain medical information not falling into one of the six categories approved by Judge Hogan. That request is unopposed and the Court will deem that information protected.

documents appear in the government's proposed public factual return with significantly more information marked for protection. Petitioner argues that because he has been released and can publicly disclose the content of these documents, the information the government asks the court to deem protected has been "officially acknowledged." In essence, petitioner makes the rather novel argument that his release has somehow transformed this limited disclosure into an official acknowledgement, and this should preclude the government from further redacting these documents before their public release.

Petitioner's argument is meritless. The documents were clearly marked "FOR OFFICIAL USE ONLY" and "Not releasable to the public." They were shared with petitioner in furtherance of his litigation. The mere fact that he has now been released and is a member of the public does transform the government's limited disclosure into an official acknowledgment. Indeed, to be officially acknowledged or officially disclosed, documents must have been made available to the public through an official and documented disclosure. *See Fitzgibbon*, 911 F.2d at 765. Second-hand disclosure by a person or entity familiar with, or in actual possession of, classified documents simply does not meet the standard. *See, e.g., Frugone*, 169 F.3d at 774–75 (citations omitted).

**B.  Petitioner's Cross-Motion to Compel Production of Public Versions of Three Filings within 30 Days is granted in part and denied in part.**

Petitioner cross-moves for an order requiring the government to produce unclassified public versions of his Traverse, Motion to Admit Hearsay Evidence, and Response to the Government's Motion to Admit Hearsay Evidence within thirty days, or alternatively, to release them concurrently with the public filing of the reprocessed factual return. (These documents were originally filed on July 31, 2009). *See* Notice of Filing, ECF No. 143.

8

In its Opposition and attached exhibits, the government spills a great deal of ink discussing the general quantity of information that it must review for public release. The government describes in detail the Byzantine classification review process and provides affidavits from representatives of the ▮ FBI, Defense Intelligence Agency, and from the Undersecretary of Defense for Intelligence, to underscore the competing demands under which the classification review teams work. These include the production of a "tremendous amount of evidence" and documents in connection with ongoing habeas and FOIA litigation, Military Commissions prosecutions (some of which require a fifteen day turnaround) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The government also maintains that petitioner has refused to participate in its global priority based process for declassification review of habeas case filings, which the government initiated at the end of August 2011. This system allows individual petitioners to designate certain filings as higher priority than others. These filings are then placed in a queue for priority review and are reviewed based on their chronological order of filing. The government argues that a court order requiring an expedited review of petitioner's filings would "force[]" the classification review teams to "neglect the many other Court-ordered and litigation-driven deadlines," and would be unfair to those detainees who have chosen to participate in the government's prioritized review process because ordering petitioner's filings to be reviewed would effectively allow him to jump the line. The government warns that this could also cause a cascade of other filings from petitioners wishing to have their documents reviewed expeditiously.

The government's arguments are unavailing and boil down to this: "Declassification is complicated and time consuming and we already have a lot of work—please don't pile on." The

9

government's pleading is filled with overbroad generalizations regarding the process, and does not specify why it has been unable to review petitioner's documents.[5] While the Court is sympathetic to the government's position, the Protective Order mandates that classified filings should be made available to the public, with appropriate redactions.[6] Indeed, allowing the Government to indefinitely withhold documents would not only violate the Protective Order, it would provide a backdoor for the Government to effectively "seal a judicial record that the public has the right to inspect and copy," which is exclusively the prerogative of the Court. *See Bismullah*, 501 F.3d at 188 (citations omitted).

The Court understands that the government has created a voluntary collaborative process for prioritized review of petitioner filings ("Prioritized Review Process"). The government justifiably points out that the Prioritized Review Process was shunned by the petitioner and a ruling in this case for the petitioner will allow him to jump ahead of other petitioners who chose to participate. However, the government's Prioritized Review Process is not a mandatory feature of the Protective Order's public release regime; rather the Protective Order makes plain that declassification of filings in habeas cases is automatic. *See* Protective Order ¶ 47; TS/SCI Protective Order ¶ 48. The Prioritized Review Process is simply an internal executive process to facilitate the release of materials mandated by the Protective Order. While the participation in the scheme may assist the government in determining what filings particular detainees wish to

---

[5] For example, the government asserts that "thinly sourced" filings, which might contain exogenous materials, delay the review process as review team members must track down information in order to determine its classification level. However, the government never addresses whether the documents at issue are themselves thinly sourced or contain any exogenous material. The Court simply lacks the necessary evidence to determine whether the government's arguments are meritorious.

[6] The Protective Orders governing Guantanamo proceedings require the government to review filings containing classified information and file on the public docket redacted versions of those documents. *See* Protective Order ¶ 47; Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information, as amended, 08-mc-442, EFC No. 1496 (Jan. 9, 2009) ("TS/SCI Protective Order") ¶ 48. For classified documents filed by the respondents, the government is required to produce public versions for release "as soon as practicable." Protective Order ¶ 48(a). However, no such time frame is given for production of petitioner's classified filings. *See* Protective Order ¶ 47(a); TS/SCI Protective Order ¶ 48(a).

10

prioritize for review, petitioners certainly are not required to participate in the process. The government's protestations would have more force if the petitioner had never, until now, asked that these particular documents be reviewed for release. But, the petitioner has repeatedly asked for their expedited declassification review to no avail. Even if he had leapt at the opportunity to participate in the government's prioritization scheme, the government admits that as of the time of its motion, petitioner's filings would have been ninth in queue; the government has given no timetable for final production.[7]

The government's argument—that it does not have the staff to complete the court-mandated review of petitioner's documents in a reasonable amount of time—is suspect. Frankly the government is selling itself short. The government has repeatedly proven that it can process mass quantities of documents on short deadlines. The government's own pleadings cite three specific examples: (1) in 2009 and 2010, the government produced 160 public factual returns for habeas cases including petitioner's; (2) the government is generally required to process documents used in connection with military commission proceedings within fifteen days of filing, *see* Regulation for Trial by Military Commission § 19-4(c)(2) (2011), *available at* http://www.mc.mil/Portals/0/2011%20Regulation.pdf; and (3) the government acknowledges that classification review teams can process documents in as little as one day.

The Court is troubled by the government's apparent lack of urgency in issuing public versions of classified materials filed in Guantanamo proceedings. In this case in particular, the government has failed to produce public versions of the petitioner's traverse and hearsay briefs, which were filed on July 31, 2009. The government argues that because petitioner's habeas petition was dismissed and he has been released from the Guantanamo Bay Detention Facility, there is no urgent need to produce these documents. However, this ignores the inherent public

---

[7] As the government admits, between October 2011 and August 2012, only 19 filings had been processed.

11

interest in Guantanamo litigation generally, and in the facts related to the release of this detainee in particular. Moreover, the practice of publicly disclosing court documents is deeply rooted in our system of government. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978). The public interest served by releasing court filings includes allowing "citizens . . . to keep a watchful eye on the workings of public agencies." *Id.* (citations omitted). More importantly, it is the judiciary and not the executive that determines whether the public can access and inspect court records. *See Bismullah*, 501 F.3d at 188 (citations omitted). Here, petitioner's documents have remained essentially under seal for approximately 42 months, and the Court sees no reason to write the government a blank check and allow them to produce the documents at some unknown point in the future.

## III. CONCLUSION

Therefore, it is hereby

**ORDERED** that highlighted information contained in the proposed public factual return for ISN 567 will be protected, except for the geo-coordinates contained in document IIR 227 0131 03 and a the word that appeared in the March 1, 2002, "Handnote;" it is

**FURTHER ORDERED** that the government will have ninety days to produce unclassified public copies of the petitioner's Traverse, Motion to Admit Hearsay Evidence, Response to the Government's Motion to Admit Hearsay Evidence, and the reprocessed factual return.

**SO ORDERED.**

**Signed by Chief Judge Royce C. Lamberth on March 8, 2013.**